**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

ROCHELLE SMITH,

Plaintiff,

v. No. CIV 03-465 JP/ACT

CARI M. DOMINGUEZ,
Chair, United States Equal Employment
Opportunity Commission,

Defendant.

**MEMORANDUM OPINION AND ORDER**

On April 30, 2004, Defendant filed a Motion for Summary Judgment as to Remaining Claims (Doc. No. 53). On June 16, 2004, Defendant filed a Notice of Completion of Briefing (Doc. No. 63) on its motion for summary judgment. On July 1, 2004, Plaintiff filed an Objection to Defendant's Certification that Briefing is Complete (Doc. No. 64). On July 6, 2004, Plaintiff filed a motion for leave to file a surreply (Doc. No. 65). Having reviewed the briefs and the relevant law, the Court overrules Plaintiff's objection as moot, and finds that Plaintiff's motion for leave to file a surreply should be denied, and that Defendant's motion for summary judgment should be granted.

**I. BACKGROUND**

The Court will view the facts in the light most favorable to the plaintiff. See EEOC v. Horizon/CMS Healthcare Corp., 220 F.3d 1184, 1189 (10th Cir. 2000). The following are the facts, established by admissible evidence, that most favor Plaintiff. Unless otherwise noted, these

facts are undisputed. Plaintiff Rochelle Smith, a White female, was employed in the Albuquerque District Office of the Equal Employment Opportunity Commission ("EEOC") from October of 1993 until March of 2002. In June of 1999, one of Plaintiff's co-workers, Christella Garcia Alley, an Hispanic female, was promoted to become Plaintiff's supervisor. Def. Mem. (Doc. No. 54) Ex. A at ¶ 34. Prior to her promotion, Ms. Alley had been an EEOC investigator and Plaintiff's co-worker in the Albuquerque District Office. Id. Ex. A at ¶ 2. Plaintiff had also applied for the supervisor position that was ultimately filled by Ms. Alley. Plf. Mem. (Doc. No. 56) Ex. 8 at ¶¶ 12-15. Since August of 1999, Georgia Marchbanks has been the head of the EEOC Albuquerque District Office, and has served as Ms. Alley's supervisor and Plaintiff's second-level supervisor. Def. Mem. (Doc. No. 54) Ex. C at 1, 3, 4.

According to Plaintiff, an atmosphere of racial hostility pervaded the EEOC Albuquerque District Office during the time of her employment there. Plf. Mem. (Doc. No. 56) Ex. 8 at ¶¶ 11-12. Plaintiff contends that this atmosphere of racial hostility bred animosity and contempt between Plaintiff and her Hispanic co-worker and supervisor, Ms. Alley. Id. Ex. 4 at 181. At one point, Ms. Alley purportedly told another EEOC employee, Patricia Gonzales-Morrow, that Plaintiff "thought she was better than Hispanic women in the office," and "that's the way White women are." Id. Ex. 7 at ¶ 14. According to Ms. Gonzales-Morrow, once Ms. Alley became Plaintiff's supervisor, Ms. Alley stated on several occasions that she intended to put Plaintiff "in her place" by not giving Plaintiff any special duties, assignments, or recognition for her work. Id. at ¶ 28. Plaintiff contends that the atmosphere of racial hostility in the Albuquerque District Office caused her physical and emotional stress, prompting her to request a leave of absence, which was granted, from late June of 2001 through late August of 2001. Id. Exs. 14-16; Def.

Mem. (Doc. No. 54) Ex. B at ¶ 14. Plaintiff returned to work in late August of 2001, and continued working until October 26, 2001, when she asked to be placed on leave without pay. Def. Mem. (Doc. No. 54) Ex. B at ¶ 14. Plaintiff's last day working in the EEOC Albuquerque District Office was October 26, 2001. Id. at ¶ 15. Subsequently, Plaintiff filed an application for disability retirement, which was granted on March 23, 2002. Id. at ¶¶ 16-17.

The EEOC Albuquerque District Office occasionally gives awards of cash and/or time-off to its employees. Id. at ¶ 6. On July 25, 2001, the office determined that it would give out awards for the fiscal year 2001, and distributed a "Call for Award Nomination" informing EEOC employees that they could nominate any other employee, or themselves, for an award. Id. Ex. B1. The notice informed employees that all nominations were to be submitted by July 30, 2001. Id. Eleven EEOC employees were nominated for an award in 2001. Id. Ex. B at ¶ 12. All eleven employees who were nominated received an award. Id. at ¶ 9. The cash awards ranged from $87 to $250, while the time-off awards ranged from two hours to eight hours. Id. at ¶ 12. Neither Ms. Alley nor any other EEOC employee nominated Plaintiff for an award in 2001. Id. at 10-11. Plaintiff admitted that she was aware that she could have nominated herself for an award. Id. Ex. D at 255, 258-59. Plaintiff had received awards in 1995, 1997 and 1999, and had not needed to nominate herself for those past awards. Id. at 262.

At the end of each fiscal year, EEOC employees are evaluated by their supervisors in a performance appraisal. Id. Ex. C at ¶ 6. The EEOC Performance Appraisal System is a three-tiered system, comprised of "Outstanding," "Proficient," and "Unacceptable." Id. at ¶ 7. For EEOC Investigators such as Plaintiff, the performance appraisal consists of two elements, "Quality of Work" and "Individual Accountability." Id. at ¶ 8. A rating of "Proficient" is defined

as the "level of good sound performance" performed by "a fully competent employee." Id. Ex. A1. A rating of "Proficient" is fully satisfactory and is not negative. Id. Ex. A at ¶ 5. A rating of "Outstanding" is defined as the "level of consistent high quality performance" that "exceeds the Proficient standard." Id. For Plaintiff's performance appraisal, Plaintiff's immediate supervisor, Ms. Alley, served as the "appraising official," while the head of the Albuquerque District Office and Plaintiff's second-level supervisor, Ms. Marchbanks, served as the "reviewing official." Id. Ex. C at ¶ 5. In October of 2001, Ms. Alley and Ms. Marchbanks met to discuss Plaintiff's performance appraisal. Id. Ex. C at ¶ 11. For Fiscal Year 2001, Ms. Alley and Ms. Marchbanks determined that Plaintiff's performance merited a rating of "Proficient." Id. Ex. A at ¶ 10; Ex. C at ¶ 11. In every preceding year of her employment with EEOC, Plaintiff had received performance ratings of "Outstanding." Initial Pretrial Report (Doc. No. 15) Stip. 5.

On August 21, 2001, Plaintiff first contacted an EEO counselor to discuss filing a formal Charge of Discrimination. Id. Ex. E at 2. After the EEO counselor's first report was filed, on October 29, 2001, Plaintiff filed her first formal EEO Charge of Discrimination. Plf. Mem. (Doc. No. 56) Ex. 25. In her first EEO Charge of Discrimination, Plaintiff alleged that she had been discriminated against on the basis of her race and national origin for, among other things, having received a Letter of Warning ("LOW") for inappropriate conduct in the workplace on September 28, 2000.[1] Id. The other allegedly discriminatory acts that Plaintiff raised in her first EEO Charge of Discrimination were that: Ms. Alley falsely accused Plaintiff of being anti-Hispanic; Ms.

[1] On January 23, 2004, this Court issued a Memorandum Opinion and Order (Doc. No. 26) granting Defendant's Motion for Partial Summary Judgment with respect to Plaintiff's claim of discrimination arising from the LOW, on the ground that Plaintiff had failed to timely file an EEO Charge of Discrimination within 45 days of receiving the LOW. Accordingly, the Court will not consider the LOW in determining whether Plaintiff's remaining claims of discrimination and retaliation survive Defendant's motion for summary judgment.

Alley encouraged co-workers to exhibit hostility toward Plaintiff; and Ms. Alley minimized the value of Plaintiff's work. Id.

On November 30, 2001, Plaintiff filed a second EEO Charge of Discrimination in which she alleged that she had been discriminated against on the basis of her race and national origin, and had been retaliated against, through the following actions: Plaintiff had not received a cash or time-off award for fiscal year 2001; Ms. Alley had discussed Plaintiff's prior EEO complaint with other EEOC employees; Ms. Alley had asked Plaintiff to provide a doctor's note for a one-day absence from work. On January 12, 2002, Plaintiff filed a third EEO Charge of Discrimination in which she alleged that she had been discriminated against on the basis of her race, national origin, and mental disability, and had been retaliated against, through the following actions: Plaintiff received a "Proficient" rating on her annual performance review rather than an "Outstanding" rating, and Ms. Alley had discussed Plaintiff's prior EEO complaints with other EEOC employees.

On April 16, 2003, Plaintiff timely filed this lawsuit, claiming violations of Title VII on the basis of race discrimination (Count I), national origin discrimination (Count II), disability discrimination (Count III) and retaliation (Count IV.) Compl. (Doc. No. 1) at 5-6.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. FED. R. CIV. P. 56(c). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett,

477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).

An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996). The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of his or her pleadings. Bacchus, 939 F.2d at 891. To withstand a motion for summary judgment, the non-movant must make specific reference to admissible evidence in the record. See Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1546 (10th Cir. 1995). Unsubstantiated allegations, no matter how true they might be, cannot be considered. See id.

## III. DISCUSSION

### A. Plaintiff's Objection to Certification that Briefing is Complete and Motion for Leave to File Surreply

In her Objection to Certification that Briefing is Complete (Doc. No. 64), Plaintiff argues that discovery in this case cannot be completed until the Court rules on Plaintiff's Appeal of Magistrate Judge Torgerson's ruling on a discovery dispute (Doc. No. 52). By Order filed July 15, 2004 (Doc. No. 68), this Court denied Plaintiff's Appeal of Magistrate Judge's Ruling. Consequently, Plaintiff's argument supporting her objection is moot.

In her Motion for Leave to file Surreply (Doc. No. 65), Plaintiff asserts that a surreply is necessary in order to respond to new issues raised in Defendant's Reply brief (Doc. No. 62), as well as to raise objections about improper exhibits that were attached to Defendant's Reply brief. (Doc. No. 62). It is within the Court's sound discretion to grant a motion for leave to file a

surreply. See FED. R. CIV. P. 7(a); Lopez v. Garcia, 145 F.3d 1346, 1346 (10th Cir. 1998) (unpublished decision). Generally, a motion for leave to file a surreply is disfavored, and a court will grant such a motion only in the event that new information is raised in a defendant's reply brief, or some other exceptional circumstance compels the filing of a surreply. See IMC Chemicals, Inc. v. Niro, Inc., 95 F.Supp.2d 1198, 1214 (D.Kan. 2000); Lopez, 1 F.Supp.2d 1404, 1406 (D.N.M. 1997), aff'd, 145 F.3d at 1346. Here, Defendants have not raised any new issues or information in their Reply brief, nor does the Court find that there exists any other exceptional circumstance that would compel the filing of a surreply. With respect to Plaintiff's argument that Defendant has attached improper documents to its Reply brief, the Court notes that in ruling on a motion for summary judgment, the Court may only consider admissible evidence. World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474 (10th Cir. 1985). Any affidavits submitted in connection with a motion for summary judgment must be based on personal knowledge, set forth facts that would be admissible in evidence, and affirmatively show that the affiant is competent to testify as to the subject matter. See FED. R. CIV. P. 56(e). The Court will disregard any exhibits that do not comport with the requirements of Rule 56(e). Accordingly, the Court concludes that Plaintiff's Motion for Leave to File Surreply should be denied.

**B. Plaintiff's Discrimination Claims**

1. Plaintiff's Claims of Discrimination based on Race and National Origin

In her Complaint (Doc. No. 1), Plaintiff alleges that Defendant discriminated against her on the basis of her race (Count I) and national origin (Count II). A plaintiff alleging discriminatory treatment under Title VII must present either direct or indirect evidence sufficient to show intentional discrimination. See Kendrick v. Penske Transp. Serv., Inc., 220 F.3d 1220,

1225 (10th Cir. 2000); Munoz v. St. Mary-Corwin Hosp., 221 F.3d 1160, 1166 (10th Cir. 2000).

The Tenth Circuit has stated that direct evidence of discrimination is evidence "which, if believed, proves [the] existence of [a] fact in issue without inference or presumption." Shorter v. I.C.G. Holdings, Inc., 188 F.3d 1204, 1207 (10th Cir. 1999) (abrogated on other grounds). Statements which require the trier of fact to infer that discrimination was a motivating cause of an employment decision are at most circumstantial evidence of discriminatory intent. See E.E.O.C. v. Wiltel, Inc., 81 F.3d 1508, 1514 (10th Cir. 1996); see also Shorter, 188 F.3d at 1207 ("statements of personal opinion, even when reflecting a personal bias or prejudice, do not constitute direct evidence of discrimination.").

Plaintiff argues that the statements made by Ms. Alley that Plaintiff "thought she was better than Hispanic women in the office," and that "that's the way White women are," and that Ms. Alley intended to put Plaintiff "in her place," constitute direct evidence of discrimination based on race and national origin. However, as Defendant correctly points out, Ms. Alley's statements at most are indirect or circumstantial evidence of discrimination, because the trier of fact would have to infer that the bias reflected in Ms. Alley's statements was the reason behind the actions taken against Plaintiff in this case. See Shorter, 188 F.3d at 1207. Accordingly, the Court concludes that Plaintiff has not presented direct evidence of discrimination.

Since Plaintiff has not offered sufficient direct evidence of discrimination, the Court must determine if there is sufficient indirect evidence of discrimination based on race or national origin for Plaintiff's claims to survive summary judgment. In analyzing indirect or circumstantial evidence of discrimination under Title VII, courts apply the burden-shifting approach set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). See also

Kendrick, 220 F.3d at 1225. Under this framework, a plaintiff must first establish a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802; Kendrick, 220 F.3d at 1226. If the plaintiff establishes a prima facie case, then the burden shifts to the defendant to demonstrate a "legitimate, non-discriminatory reason" for its action. McDonnell Douglas, 411 U.S. at 802; Kendrick, 220 F.3d at 1226. If the defendant offers a legitimate non-discriminatory reason, the burden shifts back to the plaintiff to show that the defendant's reason is mere pretext. McDonnell Douglas, 411 U.S. at 804; Kendrick, 220 F.3d at 1226.

In order to make out a prima facie case of discrimination, a plaintiff must show that: 1) she is a member of a protected class; 2) she suffered an adverse employment action; and 3) the adverse employment action occurred under circumstances that give rise to an inference of unlawful discrimination. See Trujillo v. Univ. of Colorado Health Sciences Center, 157 F.3d 1211, 1215 (10th Cir. 1998); Munoz, 221 F.3d at 1165. However, since it is undisputed that Plaintiff's race is "White, Non-Hispanic," and that her national origin is "American," Plaintiff belongs to historically favored groups. Therefore, the typical prima facie case must be adjusted for the specific context of reverse discrimination. See Sanchez v. Philip Morris, Inc., 992 F.2d 244, 248 (10th Cir. 1993). Instead of merely showing membership in a protected class, Plaintiff must establish background circumstances that support an inference that the EEOC is an unusual employer that discriminates against the majority. Notari v. Denver Water Dep't., 971 F.2d 585, 589 (10th Cir. 1992); Livingston v. Roadway Express, 802 F.2d 1250, 1252 (10th Cir. 1986).

a. Reverse Discrimination

Defendant argues that Plaintiff cannot make out a prima facie case of reverse discrimination based on race or national origin, because Plaintiff has failed to allege any

background circumstances that support an inference that the EEOC is an unusual employer that discriminates against the majority. However, Plaintiff has introduced affidavit and deposition testimony of several current and former EEOC employees who assert that Hispanic employees historically have dominated the Albuquerque District Office, and that the office is "plagued by racial tensions" between Hispanics and Whites. Plf. Mem. (Doc. No. 56) Ex. 3 at 25-28; Ex. 6 at ¶ 11; Ex. 7 at ¶ 5; Ex. 10 at ¶¶ 27-28. In addition, one former Hispanic EEOC employee, Ms. Gonzalez-Morrow, stated that in 1990 or 1991, she had been instructed by union leaders not to write a memo to EEOC management requesting that an effort be made to hire more White employees. Id. Ex. 7 at ¶ 5. Ms. Gonzalez-Morrow further stated that the union leadership expressed preferences for hiring Native Americans and African Americans, and that Plaintiff's supervisor, Ms. Alley, made racist statements about several White EEOC employees. Id. ¶¶ 5, 15. The Court finds that this evidence supports an inference that the EEOC Albuquerque District Office was an unusual employer that discriminated against the majority, and therefore, that Plaintiff has satisfied this element of the prima facie case.

b. Adverse Employment Actions

Defendant next argues that Plaintiff has failed to make out a prima facie case of racial or national origin discrimination, because the claims stated in Plaintiff's EEO Charges of Discrimination do not constitute "adverse employment actions" for Title VII purposes. The Tenth Circuit liberally construes the concept of adverse employment action for Title VII purposes. See Stinnett v. Safeway, Inc., 337 F.3d 1213, 1217 (10th Cir. 2003); Jeffries v. State of Kansas, 147 F.3d 1220, 1232 (10th Cir. 1998). As there is no set test to determine what constitutes an adverse employment action, a court must adopt a "case by case approach," and evaluate the

unique factors relevant to the situation at hand. See Sanchez v. Denver Pub. Schs., 164 F.3d 527, 531-32 (10th Cir. 1998). However, an adverse employment action generally occurs only when there is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." See Meiners v. Univ. of Kansas, 359 F.3d 1222, 1230 (10th Cir. 2004); Stinnett, 337 F.3d at 1217.

In her three EEO Charges of Discrimination, Plaintiff alleges the following are adverse employment actions sufficient to make out a prima facie case of discrimination based on race or national origin: 1) Plaintiff did not receive a cash or time-off award in 2001; 2) Plaintiff received a "Proficient" rating on her annual performance review rather than an "Outstanding" rating; 3) Ms. Alley falsely accused Plaintiff of being Anti-Hispanic; 4) Ms. Alley encouraged co-workers to exhibit hostility toward Plaintiff; 5) Ms. Alley minimized the value of Plaintiff's work; 6) Ms. Alley discussed Plaintiff's first EEO complaint with other EEOC employees; and 7) Ms. Alley asked Plaintiff to provide a doctor's note for a one-day absence from work. However, none of these incidents rises to the level of an "adverse employment action" for Title VII purposes.

While Plaintiff argues that her failure to receive a cash or time-off award is an adverse employment action, it is undisputed that the employees in the EEOC Albuquerque District Office were not automatically entitled to receive such an award in 2001. Def. Mem. (Doc. No. 54) Ex. B at ¶¶ 9, 12. Courts have held that the loss of a discretionary bonus does not constitute an adverse employment action for Title VII purposes. See, e.g., Rabinovitz v. Pena, 89 F.3d 482, 488-89 (7th Cir. 1996). With respect to Plaintiff's receiving a "Proficient" rating on her annual performance review, it is undisputed that a "Proficient" rating is a fully satisfactory performance

rating. Def. Mem. (Doc. No. 54) Ex. A at ¶ 5. The Tenth Circuit has held that a satisfactory performance rating is not an adverse employment action, even if the plaintiff perceives the rating as negative because it was lower than previous evaluations. See Meredith v. Beech Aircraft Corp., 18 F.3d 890, 896 (10th Cir. 1994).

With respect to the other alleged adverse employment actions that Plaintiff listed in her three EEO Charges of Discrimination, Plaintiff has failed to cite specific evidence in the record that supports her allegations that Ms. Alley falsely accused Plaintiff of being anti-Hispanic, or encouraged other EEOC employees to exhibit hostility toward Plaintiff, or minimized the value of Plaintiff's work, or discussed Plaintiff's EEO complaint with other EEOC employees, or required Plaintiff to provide a doctor's note for a one-day absence from work. See D.N.M. LR-Civ 56.1(b). Accordingly, Plaintiff's claims cannot survive summary judgment on the basis of those alleged adverse employment actions. See Bacchus, 939 F.2d at 891 (the non-moving party may not avoid summary judgment by resting on the mere allegations or denials in his or her pleadings). Moreover, even if Plaintiff had supported those alleged adverse employment actions with admissible evidence, none of those actions by Ms. Alley, however distasteful to Plaintiff, rises to the level of an "adverse employment action" under Title VII, because none of those actions caused a "significant change" in Plaintiff's employment status or the conditions of Plaintiff's employment. See Stinnett, 337 F.3d at 1217; Petersen v. Utah Dep't of Corr., 301 F.3d 1182, 1188 (10th Cir. 2002) (Title VII does not prohibit all distasteful practices by employers).

Plaintiff also argues that she suffered the adverse employment actions of, among other things: being called a racist; having racist things said about her; having discipline "trumped up" against her; having burdensome extra assignments imposed on her; being forbidden to help others;

being falsely accused of refusing to help others; being deprived of ordinary and extraordinary recognition; and being assigned impossible tasks such as interviewing people who speak other languages. See Plf. Mem. (Doc. No. 56) at 20. However, Plaintiff has failed to exhaust her administrative remedies for these alleged adverse employment actions, because Plaintiff did not list these actions in an EEO charge of discrimination. See Annett v. Univ. of Kansas, 371 F.3d 1233, 1238 (10th Cir. 2004) (plaintiff must include each discrete discriminatory act in the EEO charge of discrimination in order to exhaust administrative remedies). Because Plaintiff has not exhausted her administrative remedies for these alleged adverse employment actions, the Court lacks jurisdiction to consider these actions in support of her discrimination claims. See id.; Seymore v. Shawver & Sons, Inc., 111 F.3d 794, 799 (10th Cir. 1997). Accordingly, since Plaintiff has not alleged that she suffered an "adverse employment action," Plaintiff has failed to make out a prima facie case of discrimination based on race or national origin.

2. Plaintiff's Claim of Discrimination Based on Disability

Plaintiff also claims that Defendant discriminated against her based on her disability (Count III). Since Plaintiff has not offered direct evidence of discrimination based on her disability, the Court will determine if there is sufficient indirect evidence of discrimination based on Plaintiff's disability. In order to make out a prima facie case of disability discrimination under the McDonnell Douglas framework, Plaintiff must show that: 1) she is a disabled person within the meaning of the Rehabilitation Act of 1973; 2) she was qualified, that is, able to perform the essential functions of the job, with or without reasonable accommodation; and 3) she suffered an adverse employment action because of her disability. See Morgan v. Hilti, 108 F.3d 1319, 1323 (10th Cir. 1997).

Defendant argues that Plaintiff cannot make out a prima facie case of disability discrimination, because Plaintiff has not presented any evidence that she is "disabled" within the meaning of the Rehabilitation Act of 1973. In her memorandum in response to Defendant's motion for summary judgment (Doc. No. 56), Plaintiff failed to respond to this argument. Failure to respond to this argument constitutes consent to grant Defendant's motion with respect to this claim. See D.N.M. LR-Civ. 7.1(b) (failure to serve a response in opposition to a motion constitutes consent to grant that motion). Moreover, in her memorandum, Plaintiff has cited no evidence in the record to support a finding that Plaintiff is "disabled" under the Rehabilitation Act of 1973, as is required under the Local Civil Rules for the United States District Court for the District of New Mexico. See D.N.M. LR-Civ. 56.1(b). Thus, Plaintiff has failed to satisfy the first element of the prima facie case for her claim of discrimination based on her disability.

Additionally, Defendant asserts that Plaintiff cannot make out a prima facie case of disability discrimination because there is no evidence that Plaintiff suffered an "adverse employment action." As previously discussed in the analysis of Plaintiff's claims of racial and national origin discrimination, the actions that Plaintiff listed in her three EEO Charges of Discrimination do not constitute "adverse employment actions" for Title VII purposes. Accordingly, the Court finds that Plaintiff has failed to make out a prima facie case of discrimination based on her disability.

**C. Plaintiff's Retaliation Claim**

Plaintiff also claims that Defendant retaliated against her after she filed her first EEO Charge of Discrimination (Count IV). Title VII prohibits an employer from retaliating against an employee who has opposed any practice made unlawful by Title VII, or because the employee has made a charge, testified, assisted, or participated in any manner in an investigation under Title VII. See 42 U.S.C. § 2000e-3(a). In analyzing Title VII retaliation claims, courts apply the McDonnell Douglas burden-shifting approach. To survive summary judgment, a plaintiff must establish a prima facie case of retaliation by showing that: 1) she engaged in protected opposition to discrimination; 2) she suffered an adverse employment action; and 3) a causal connection exists between the protected activity and the adverse employment action. O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1252 (10th Cir. 2001). Once a plaintiff makes a prima facie showing, the burden shifts to the defendant, who must articulate a non-discriminatory reason for the adverse employment action. If the defendant makes such a showing, then the plaintiff must respond by showing that the defendant's articulated reason is pretextual. McDonnell Douglas, 411 U.S. at 804; O'Neal, 237 F.3d at 1252.

Defendant again argues that Plaintiff cannot make out a prima facie case of retaliation, because Plaintiff was not subjected to an "adverse employment action." As previously discussed in the analysis of Plaintiff's discrimination claims, the actions Plaintiff alleged in her second and third EEO Charges of Discrimination[2] do not rise to the level of "adverse employment action" for

[2] Plaintiff did not allege a claim of retaliation in her first EEO Charge of Discrimination. Accordingly, the Court will not consider the alleged adverse employment actions that Plaintiff listed in her first EEO Charge of Discrimination in the analysis of Plaintiff's retaliation claim, because Plaintiff did not exhaust her administrative remedies for a retaliation claim with respect to those alleged employment actions. See Gunnell v. Utah Valley State College, 152 F.3d 1253, 1260 n.3 (10th Cir. 1998).

Title VII purposes. Plaintiff argues that for purposes of a retaliation claim, the Tenth Circuit liberally defines the term "adverse employment action," and has held that co-worker hostility, if sufficiently severe, may constitute an "adverse employment action." See Gunnell, 152 F.3d at 1264. However, the incidents of co-worker hostility that Plaintiff alleged in her second and third EEO Charges of Discrimination, such as Ms. Alley's discussing Plaintiff's EEO complaint with other EEOC employees and requiring Plaintiff to provide a doctor's note for a one-day absence from work, although annoying, are not sufficiently severe to rise to the level of "adverse employment action." See, e.g., Heno v. Sprint/United Mgmt. Co., 208 F.3d 847, 857-58 (10th Cir. 2000) (co-worker hostility that included moving plaintiff's desk, acting chilly toward plaintiff, monitoring plaintiff's phone calls, and suggesting plaintiff switch departments was not an "adverse employment action" to support a retaliation claim). Moreover, as previously noted in the analysis of Plaintiff's discrimination claims, Plaintiff has not cited any evidence in the record to support these specific allegations of Ms. Alley's retaliatory acts of hostility. See D.N.M. LR-Civ. 56.1(b). Consequently, Plaintiff has failed to make out a prima facie case of retaliation.

**D. Plaintiff's Hostile Work Environment Claim**

Although Plaintiff did not plead a claim of hostile work environment in her original complaint, Plaintiff asserts a claim for a racially hostile work environment in both her response memorandum (Doc. No. 56) and the Pretrial Order (Doc. No. 72). Accordingly, the Court finds that Plaintiff has amended her complaint to include a claim for hostile work environment. See Wilson v. Muckala, 303 F.3d 1207, 1215 (10th Cir. 2002) (the inclusion of a claim in the pretrial order is deemed to amend any previous pleadings which did not include that claim).

Defendant argues that Plaintiff has not exhausted her administrative remedies for a hostile

work environment claim because she did not include a claim for a hostile work environment in an EEO Charge of Discrimination. A Plaintiff must exhaust her administrative remedies by filing a timely charge of discrimination with the EEOC prior to filing a civil action under Title VII in federal court. See Jones v. Denver Post Corp., 203 F.3d 748, 755 (10th Cir. 2000). Here, Plaintiff's claim for hostile work environment is based on her allegations that she was subjected to a series of separate acts of harassment. In all three of her EEO Charges of Discrimination, Plaintiff alleged that she was subjected to "daily harassment" or "continued harassment" in the form of various hostile actions that Ms. Alley took against her. See Plf. Mem. (Doc. No. 54) Exs. 25-27. Consequently, the Court finds that Plaintiff has exhausted her administrative remedies for a claim of hostile work environment. See Davis v. United States Postal Service, 142 F.3d 1334, 1340 (10th Cir. 1998) (plaintiff exhausted administrative remedies for hostile work environment claim by alerting EEO counselor of hostile actions within prescribed time limit).

Defendant further argues that Plaintiff cannot survive summary judgment on her hostile work environment claim because Plaintiff has not alleged that she was subjected to actions that were objectively severe or pervasive enough to support a hostile work environment claim under Title VII. In order to make out a prima facie case of hostile work environment, Plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." See Davis, 142 F.3d at 1341 (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). In addition, Plaintiff must also show that the harassment was racial or stemmed from racial animus. See Bolden v. PRC Inc., 43 F.3d 545, 551 (10th Cir. 1995). In deciding whether a hostile work environment exists, it is necessary to look at all the

circumstances, which may include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." See Nieto v. Kapoor, 268 F.3d 1208, 1218 (10th Cir. 2001) (quoting Harris, 510 U.S. at 23). Based on the totality of the circumstances, the work environment must be perceived both subjectively and objectively as abusive. See Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998). General harassment if not racial or sexual is not actionable. Bolden, 43 F.3d at 551. Moreover, the Tenth Circuit has held that "sporadic racial slurs," or "a few isolated instances of racial enmity," do not constitute a hostile work environment. See Jones v. Barnhart, 349 F.3d 1260, 1269 (10th Cir. 2003); Bolden, 43 F.3d at 551.

Here, even if Plaintiff had provided evidentiary support for all of the allegations in her three EEO Charges of Discrimination [3] – which, as the Court has previously noted, she has not – those allegations would not support a claim for a racially hostile work environment. Although Plaintiff alleged that Ms. Alley falsely accused her of being Anti-Hispanic, this isolated instance of racial enmity is insufficient, standing alone, to support a claim for hostile work environment. See Bolden, 43 F.3d at 551 (racial comments that are not pervasive are not actionable under a claim for hostile work environment); Sprague v. Thorn Americas, Inc., 129 F.3d 1355, 1366 (10th Cir. 1997) (five instances of sexually inappropriate conduct over sixteen month period not sufficiently frequent to support hostile work environment claim). Since none of the other hostile actions that

[3] In analyzing Plaintiff's claim for a hostile work environment, the Court cannot consider any allegedly hostile actions that Plaintiff failed to include in her EEO Charges of Discrimination, because Plaintiff has not exhausted her administrative remedies with respect to those allegedly hostile actions. See Arambaru v. Boeing Co., 112 F.3d 1398, 1410 (10th Cir. 1997).

Plaintiff alleged in her three EEO Charges of Discrimination were overtly racial or stemmed from racial animus, those actions do not support a claim for a racially hostile work environment. See Jones, 349 F.3d at 1269 (incidents that do not appear to be founded in racial enmity fail to support claim for racially hostile work environment); Bolden, 43 F.3d at 551 (general harassment if not racial or sexual is not actionable). Furthermore, none of these alleged hostile actions was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment. See Davis, 142 F.3d at 1341; Kirk v. City of Tulsa, 72 Fed.Appx. 747, 751 (10th Cir. 2003) (unpublished decision) (supervisor's sexually offensive remarks, reprehensible behavior, and indiscriminate boorishness and vulgarity not sufficient to support claim for hostile work environment). Accordingly, the Court finds that Plaintiff has failed to make out a prima facie case of hostile work environment.

THEREFORE, it is ORDERED that:

1. Plaintiff's Objection to Defendant's Certification that Briefing is Complete is OVERRULED as moot;
2. Plaintiff's Motion for Leave to File Surreply is DENIED; and
3. Defendant's Motion for Summary Judgment is GRANTED.

James A. Parker

SENIOR UNITED STATES DISTRICT JUDGE